# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * * * *
SANDY GINSBERG, *
* No. 19-222V
Petitioner, * Special Master Christian J. Moran
*
v. *
* Filed: August 8, 2025
SECRETARY OF HEALTH *
AND HUMAN SERVICES, *
*
Respondent. *
* * * * * * * * * * * * * * * * * * * * * *

Amy Senerth, Muller Brazil, Dresher, PA, for petitioner;
Elizabeth Andary, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

Pending before the Court is petitioner Sandy Ginsberg's motion for final attorneys' fees and costs. She is awarded **$152,235.96**.

## I. Procedural History

### A. Entitlement Phase

Ms. Ginsberg alleged that a January 9, 2017 influenza ("flu") vaccination harmed her. See Am. Pet., filed Oct. 29, 2021. Within about six weeks, Ms. Ginsberg first consulted the law firm that eventually represented her, Muller

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

Brazil. Timesheets.[2] Paralegals gathered medical records for approximately two years.

Represented by Attorney Amy A. Senerth, Ms. Ginsberg initiated this litigation by filing her petition on February 8, 2019. The original petition alleged that Ms. Ginsberg suffered a shoulder injury related to vaccine administration ("SIRVA"), which appears on the Vaccine Injury Table. The case was accordingly assigned to the special processing unit. Order, issued Feb. 11, 2019.

The Secretary maintained that Ms. Ginsberg was not entitled to compensation. Resp't's Rep., filed July 22, 2020, pursuant to Vaccine Rule 4. The Secretary's summary of medical records ended in October 2017, because more recent records had not been filed. The Secretary opposed compensation because, in part, Ms. Ginsberg was also suffering from a cervical radiculopathy. Id. at 4.

The case was assigned to the undersigned. Order, issued Jan. 21, 2021. A set of instructions for presenting reports from expert witnesses was issued. Order, issued Jan. 26, 2021.

Ms. Ginsberg supported her claim by presenting an opinion from a specialist in rehabilitation, Naveed Natanzi. Exhibit 19, filed Mar. 9, 2021. Dr. Natanzi has previously assisted petitioners seeking compensation in the Vaccine Program. According to Dr. Natanzi's invoice, he spent 10.5 hours in preparing this report.[3]

Dr. Natanzi cited 11 medical articles. Exhibit 19 at 10. Ms. Senerth reviewed these articles. Time entries for Mar. 9, 2021.

In response, the Secretary submitted reports from an orthopedic surgeon, Paul Cagle, and a neurologist, Brian Callaghan. Exhibit A, filed May 27, 2021; Exhibit B, filed June 14, 2021. Both Dr. Cagle and Dr. Callaghan have testified on behalf of the Secretary.

To address these opinions, Ms. Ginsberg submitted a second report from Dr. Natanzi. Exhibit 34. Dr. Natanzi agreed that Ms. Ginsberg suffered from a cervical radiculopathy. But, Dr. Natanzi maintained that her cervical radiculopathy

[2] The Timesheets are found as Exhibit A to the February 5, 2025 motion for attorneys' fees and costs.

[3] Dr. Natanzi's invoice is found within Exhibit A to the February 5, 2025 motion for attorneys' fees and costs. More specifically, it appears as pdf pages 49-50 of that document.

did not explain all her problems. For this second report, Dr. Natanzi has charged 6.5 hours.

The parties were directed to file briefs based upon the February 8, 2019 petition's allegation that Ms. Ginsberg suffered the on-Table injury, SIRVA. Order, issued Oct. 28, 2021. The next day, Ms. Senerth spent approximately one hour working on amending the petition. The amended petition adds a single line: "Petitioner asserts a 'Table' claim, as well as a 'Non-table' claim." Am. Pet., filed Oct. 29, 2021, at Preamble. For example, by October 2021, Ms. Ginsberg had acquired additional evidence (medical records, reports from Dr. Natanzi, and medical articles). However, none of this updated information is reflected in the amended petition.

Ms. Ginsberg advanced her on-Table and off-Table theories of relief. Pet'r's Mot. for Ruling on the Record, filed Jan. 5, 2022. The motion is approximately 23 pages. Ms. Senerth has charged approximately 24 hours for this process. See Time entries from Jan. 2, 2022 to Jan. 5, 2022. To Ms. Senerth's credit, many entries detail the section of the brief on which she was working. E.g. Time entry for Jan. 4, 2022 ("Draft application re: Table/SIRVA claim").

After the Secretary opposed Ms. Ginsberg's request for compensation (see Resp't's Resp., filed Mar. 7, 2022), Ms. Ginsberg maintained her position via an 18-page reply brief, filed April 6, 2022. In her reply, Ms. Ginsberg argued that a reasonable amount of compensation for her pain and suffering was $75,000. Ms. Senerth spent approximately 16 hours writing the reply. The 16 hours spent writing does not include time Ms. Senerth spent reading medical articles or cases.

A review of the evidence and parties' briefs revealed that some medical records created close in time to the vaccination had not been filed. Thus, Ms. Ginsberg was instructed to obtain them.

Ms. Ginsberg obtained those old medical records and filed them. Exhibits 42-43. Based, in part, on those medical records, Ms. Ginsberg was tentatively found to have started to have pain in her shoulder within 48 hours of the vaccination. Tentative Finding, issued June 12, 2023. The amount of her pain and suffering was tentatively found to be $40,000. Id. The parties were directed to seek mutually convenient dates for an in-person hearing, which was planned for Ann Arbor, Michigan.

With a tentative resolution of some issues, the parties explored an informal resolution. However, they were not successful. Pet'r's Status Rep., filed Aug. 11,

2023. Because an in-person hearing was likely, an order regarding travel expenses was issued on August 17, 2023.

A few months before the hearing was scheduled, Ms. Ginsberg suffered a car accident, and her injuries prevented her from traveling. Ms. Ginsberg, therefore, testified remotely on November 7, 2023. The other witnesses, Dr. Natanzi, Dr. Cagle, and Dr. Callaghan, testified at a hearing in Ann Arbor on November 29-30, 2023. As discussed below, Dr. Natanzi's charges for attending the hearing are points of significant dispute.

After the hearing, Ms. Senerth communicated that she wanted to file a brief. Accordingly, a schedule was set up. Order, issued Dec. 6, 2023. The parties were directed to address cases in which special masters had addressed how a vaccinee's cervical radiculopathy affects a claim that a vaccine caused a shoulder injury.

Ms. Ginsberg argued her case. Pet'r's Post-Hearing Br., filed Apr. 12, 2024. The Secretary maintained that she was not entitled to compensation. Resp't's Post-Hearing Br., filed May 28, 204. Ms. Ginsberg addressed the Secretary's arguments. Pet'r's Post-Hearing Reply, filed July 10, 2024.

Ms. Ginsberg was found entitled to compensation and awarded $40,000 in compensation. Decision, issued July 31, 2024, 2024 WL 3912830.

**B. Attorneys' Fees and Costs Phase**

Ms. Ginsberg requested an award of her attorneys' fees and costs via the pending motion, filed Feb. 5, 2025. More specifically, Ms. Ginsberg sought $134,265.95 in attorneys' fees plus $66,265.72 in attorneys' costs for a total of $200,531.67.

The Secretary responded. Although a bulk contained the Secretary's stock response deferring to the special master's assessment, the Secretary raised issues regarding Dr. Natanzi. Resp't's Resp., filed Feb. 14, 2025.

Although a reply might have been expected, Ms. Ginsberg did not address the issues raised in the Secretary's response. With the expiration of the time for filing a reply, Ms. Ginsberg's motion for attorneys' fees and costs is ready for adjudication.

## II. Standards for Adjudication

Ms. Ginsberg received compensation. Thus, she is entitled to an award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e).

A basic touchstone in determining the reasonable basis of any particular charge is to assess whether an attorney would bill a client. If an attorney would not bill a client, then the attorney should not bill an adversary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993), citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983). Excessive billing is not consistent with superior quality legal work. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 566-67 (1986). The burden of showing an entitlement to an award of attorneys' fees and costs and the burden for documenting the reasonableness of any proposed amount rest with the party seeking fees. Fox v. Vice, 563 U.S. 836, 838 (2011).

In assessing the reasonableness of any proposed fee or cost, judicial officers may rely upon their experience in adjudicating fee applications. Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). An award of attorneys' fees does not need to be calculated with the accuracy of an accountant. Fox, 563 U.S. at 838 (indicating that trial courts may use "rough justice" in awarding attorneys' fees). For example, trial courts may impose reduced attorneys' fees and costs by percentages. Internat'l Rectifier Corp. v. Samsung Elec. Co., 424 F.3d 1235, 1239 (Fed. Cir. 2005) (noting an obligation to provide a "concise but clear explanation"); FastShip, LLC v. United States, 143 Fed. Cl. 700, 733 (2019) (reducing a damages expert fees by 85%), vacated on other grounds, 968 F.3d 1335 (Fed. Cir. 2020), reinstated after remand, 153 Fed. Cl. 215, 232-33 (2021), app. dismissed, No. 2021-2031, 2021 WL 2413188 (Fed. Cir. June 10, 2021). "[E]ach attorney fee determination stands or falls on its own merits." De Souza v. Sec'y of Health & Hum. Servs., 141 Fed. Cl. 338, 347 (2008).

## III. Assessment

Ms. Ginsberg's request will divided into two components, her request for attorneys' fees and her request for attorneys' costs.

### A. Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the

number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

1. Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

Petitioner requests the following rates of compensation for the work of her counsel: for Ms. Amy Senerth, $225.00 per hour for work performed in 2018, $233.00 per hour for work performed in 2018, $250.00 per hour for work performed in 2019, $275.00 per hour for work performed in 2020, $300.00 per hour for work performed in 2021, and $325.00 - $350.00 per hour for work performed in 2022; and for Mr. Max Muller, $275.00 per hour for work performed in 2016, $300.00 per hour for work performed in 2017, and $400.00 per hour for work performed in 2022. The undersigned has reviewed the requested rates and finds them to be reasonable and consistent with what the undersigned has previously awarded to petitioner's counsel at Muller Brazil, LLP for her Vaccine Program work. See, e.g. Viner v. Sec'y of Health & Human Servs., No. 20-357V, 2022 WL 9790765 (Fed. Cl. Spec. Mstr. Sept. 30, 2022); Pavlicek v. Sec'y of Health & Human Servs., No. 19-1573V, 2022 WL 4115663 (Fed. Cl. Spec. Mstr. Aug. 12, 2022).

The hourly rates are proposed and found accepted because, in part, Ms. Senerth and her colleagues at Muller Brazil are experienced in representing petitioners in the Vaccine Program. See Pet'r's Mot. at 2 (describing experience). The relatively high hourly rates suggests that attorneys will work efficiently. See Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 733 (2011) (noting that an experienced attorney who charges a relatively high hourly rate may

be expected to perform some tasks in less time than inexperienced attorneys with lower hourly rates). The amount of time spent is addressed next.

2. Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

The undersigned has reviewed the submitted billing entries and finds that an overall reduction to the requested fees is warranted. First, a reduction must be made to account for administrative tasks such as paralegals filing documents and attorneys billing time to direct their filing. See Guerrero v. Sec'y of Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), mot. for rev. den'd in relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016). Attorneys at Muller Brazil have had fees reduced due to this issue before. See Frogge v. Sec'y of Health & Hum. Servs., No. 16-1693V, 2022 WL 16848667, at *3 (Fed. Cl. Spec. Mstr. Oct. 25, 2022). The undersigned will reduce the final award of fees by $2,000.00 to account for these issues.

Next, Ms. Senerth has charged an excessive amount of time for tasks, such as reading medical articles. To provide one example, Ms. Senerth invoiced for 0.50 hours reading the Atanasoff article. Time entry for Mar. 9, 2021; see also Time entry for Apr. 6, 2022.[4] Atanasoff is one of the primary articles underlying the Secretary's recognizing SIRVA. See 80 Fed. Reg. 45132 (July 29, 2015) (notice of proposed rulemaking). Thus, Ms. Senerth is likely to have encountered and reviewed Atanasoff before March 2021. In any event, the Atanasoff article is only four pages, and the terminology is not complicated. See Exhibit 21. Thus, it is difficult to see how an experienced attorney can spend 30 minutes reading four pages.

[4] In March 2021, Atanasoff may not have been relevant to Ms. Ginsberg's case because she was seeking compensation for an on-Table injury only. Whether Ms. Ginsberg was entitled to compensation depended entirely upon whether she met the regulatory definition of SIRVA. But, Atanasoff became more relevant after Ms. Ginsberg sought compensation for an off-Table injury.

Although Atanasoff is provided as one example, Ms. Senerth spent more time than expected on almost all articles filed as exhibits. To a lesser extent, this practice also carried over to Ms. Senerth's review of legal materials. See time entry for Mar. 23, 2022 (spending one hour reviewing an opinion that is approximately 22 pages in length); see also Mar. 11, 2024; July 3, 2024; July 10, 2024 (all entries in which Ms. Senerth re-reviewed the same case). To account for these issues $4,000 is removed.

Petitioner is therefore awarded final attorneys' fees of $128,265.95.

**B. Costs Incurred**

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $66,265.72 in attorneys' costs. Most of this amount is attributable to work performed by Dr. Natanzi with the balance comprised of acquiring medical records, postage, the Court's filing fee, and travel costs to attend the hearing in Ann Arbor. With one exception, these costs are reasonable and supported with the necessary documentation and shall be fully reimbursed. Dr. Natanzi's work, however, requires additional discussion.

Dr. Natanzi's invoice seeks compensation at a rate of $600.00 per hour. As a starting point, Dr. Natanzi's work has typically been compensated at $500.00 by the undersigned and other special masters. See, e.g., Karapetian v. Sec'y of Health & Human Servs., No. 19-546V, 2022 WL 1865083, at *3 (Fed. Cl. Spec. Mstr. May 9, 2022). Although Dr. Natanzi's testimony contributed to Ms. Ginsberg's receipt of compensation, his work was not of such exceptional quality that his work merits a premium increase.

A much greater concern regards the number of hours Dr. Natanzi has charged. His invoice starts reasonably with respect to his first report (10.5 hours), his second report (6.5 hours), and his third report (7 hours). The time spent on these activities is entirely reasonable and fully compensated. Next, apparently on a single day, Dr. Natanzi spent 11 hours preparing to testify. This much time is approaching, and potentially surpassing, the upper bounds of reasonableness. However, the benefit of the doubt is extended to Dr. Natanzi, and this time is also fully credited.

The same cannot be said for the remaining two entries. For two days of trial testimony, Dr. Natanzi has charged $28,800.00. When that amount is divided by

Dr. Natanzi's proposed hourly rate ($600.00), the result shows that Dr. Natanzi has invoiced for 48 hours. In other words, for two days, Dr. Natanzi has charged for every minute, regardless of whether he was awake or asleep.

The Secretary pointed to this charge. Resp't's Resp. at 6. If Ms. Ginsberg had a defense to this charge, she did not provide it as she did not file a reply brief.

This proposed charge so greatly exceeds the bounds of reasonableness that no compensation will be awarded. The undersigned is certainly aware that Dr. Natanzi appeared in court in Ann Arbor, and ordinarily, would be entitled to some compensation for his time. However, the proposal is shocking. In such unusual circumstances, the undersigned declines to reduce Dr. Natanzi's charge to a reasonable number of hours. The purpose of not awarding any compensation for such an unreasonable request is to deter other people from making similarly outrageous requests. Valdes v. Sec'y of Health & Human Servs., No. 99–310V, 2009 WL 1456437, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2009) (warning that penalties may be necessary to motivate an attorney to submit requests for fees that do not contain "erroneous, duplicative, or unreasonable entries"), mot. for rev. granted in non-relevant part and denied in non-relevant part, 89 Fed. Cl. 415 (2009); see also Environmental Defense Fund, Inc. v. Reilly, 1 F3d 1254, 1258 (D.C. Cir. 1993) (stating courts "may deny in its entirety a request for an 'outrageously unreasonable' amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place") (citation omitted); Dorr v. Weber, 741 F.Supp.2d 1022. 1036 (N.D. Iowa 2010) (reducing entire fee award by 10 percent for a "wildly over-inflated fee request").

Next, Dr. Natanzi has charged $9,000 as an "appearance fee" for missing work. This charge, too, is exorbitant. Again, the Secretary noted this charge (Resp't's Resp. at 6), but Ms. Ginsberg did not reply. This charge is eliminated in its entirety.

With his invoice, Dr. Natanzi requested various items of costs associated with his travel, such as Uber and food. The proposed costs for ground transportation and meals are reasonable. However, Dr. Natanzi also flew first class. Fee App'n at pdf 60 (showing a charge of $1,887.81). This method of transportation is not reasonable and was specifically warned against in the August 17, 2023 order. Further, the order advised that the submission of travel via first class would result in a deduction of twice the amount charged. Accordingly, $3,795.62 is removed.

The compensation awarded for Dr. Natanzi is therefore as follows:

| Activity | Time | Rate | Subtotal |
|---|---|---|---|
| First Report | 10.5 | $500.00 | $5,250.00 |
| Second Report | 6.5 | $500.00 | $3,250.00 |
| Third Report | 7 | $500.00 | $3,500.00 |
| Prep Time | 11 | $500.00 | $5,500.00 |
| Travel Expenses | | | $2,563.21 |
| Penalty | | | -$3,795.62 |
| Total | | | $16,267.59 |

This determination reduces Dr. Natanzi's invoice by $42,295.62.

Petitioner is therefore awarded final attorneys' costs of $23,970.01.

## IV. Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$152,235.96** (representing $128,265.95 in attorneys' fees and $23,970.01 in attorneys' costs) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master