# In the United States Court of Federal Claims

|  |  |
|---|---|
| SANDY GINSBERG, <br><br> *Petitioner*, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> *Respondent*. | No. 19-222[1] <br> (Filed: November 26, 2025) |

*Amy Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Eleanor Hanson*, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

**OPINION AND ORDER**

**LERNER,** *Judge*.

      Petitioner Sandy Ginsberg seeks review of an attorneys' fee award under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa-1 *et seq.* ("Vaccine Act"). Pet'r's Mot. for Review (hereinafter "Mot. for Review") at 2, ECF No. 128.

      On February 8, 2019, Ms. Ginsberg filed a petition with the Office of Special Masters alleging she suffered a shoulder injury following an influenza vaccination. Pet. at 1, ECF No. 1. After a hearing on entitlement, Special Master Christian Moran found Petitioner is entitled to $40,000 in compensation. Decision Awarding Compensation at 2, ECF No. 119. Petitioner filed an application seeking attorneys' fees and costs totaling $200,531.67. Pet'r's App. for Att'ys' Fees (hereinafter "Pet'r's App.") at 2, ECF No. 124. The Special Master determined some of the claimed costs were inappropriate; he deducted $48,295.71 and awarded a total of $152,235.96. Decision Awarding Att'ys' Fees and Costs (hereinafter "Dec.") at 10, ECF No. 126.

      The Special Master acted within his discretion by reducing the reasonable hours spent by Petitioner's counsel on literature review and denying Petitioner's excessive charge for forty-eight straight hours of expert testimony. He also acted within his authority to enforce a pretrial order when he imposed a double deduction of the expert's first-class airfare charge, which Petitioner submitted in violation of that order. However, he reduced the hourly rate for Petitioner's expert from $600 to $500 without citing evidence that $500 was a reasonable market rate. Accordingly,

---

[1] This Opinion was originally filed under seal on November 7, 2025. ECF No. 132. The Court provided the parties the opportunity to review the Opinion and submit proposed redactions by November 21, 2025. The parties did not propose any redactions.

Petitioner's Motion for Review is **GRANTED-IN-PART** and **DENIED-IN-PART**, and the Special Master's Decision is **AFFIRMED-IN-PART** and **VACATED-IN-PART**.

**I.     Background**

On February 8, 2019, Ms. Ginsberg filed a petition for compensation under the Vaccine Act alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") following a January 2017 influenza vaccination.  Dec. at 2.  Petitioner submitted expert reports from Dr. Naveed Natanzi, a rehabilitation specialist, while Respondent filed expert reports from Dr. Paul Cagle, an orthopedic surgeon, and Dr. Brian Callaghan, a neurologist.  *Id.*  A hearing was held in Ann Arbor, Michigan on November 29 and 30, 2023, at which all three experts testified.  *Id.* at 4.  Special Master Moran issued a decision on July 31, 2024, finding Petitioner was entitled to $40,000 in compensation.  *Id.*

Petitioner subsequently filed an application for attorneys' fees and costs, seeking a total of $200,531.67, including $134,265.95 in attorneys' fees and $66,265.72 in costs.  *Id.*  The application attached billing entries for Petitioner's counsel, Amy Senerth and Max Muller, several paralegals, and Dr. Natanzi.  *Id.* at 6–10; *see generally* Pet'r's App.

Respondent objected to four items in Petitioner's application: Dr. Natanzi's first-class airfare to Ann Arbor, which cost $1,897.81; his $600 hourly rate; his $28,800 bill for two twenty-four hour days of testimony; and his $9,000 fee for "Outside Los Angeles appearance fee to EAST Coast including 1.0 missed days of work due to restrictions in traveling cross country and time difference."  Resp. to Pet'r's App. at 5–10, ECF No. 125 (first citing Pet'r's App. at 58–60; then citing Pet'r's App. at 49–50; and then quoting Pet'rs App. at 49–50).  Petitioner did not file a reply.  Dec. at 4.

On August 8, 2025, the Special Master issued a decision awarding Petitioner $152,235.96 using the "lodestar" method to calculate reasonable attorneys' fees and costs.  *Id*. at 5–6.  He reduced Petitioners' requested fees in four principal areas.  *Id*. at 10.  First, he deducted $2,000 from attorneys' fees to account for "attorneys billing time to direct" paralegals filing documents.  *Id.* at 7 (citing *Guerrero v. Sec'y of Health & Hum. Servs.*, No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015), *aff'd in part, rev'd in part*, 124 Fed. Cl. 153 (2015)).

Second, he reduced the reasonable number of hours spent by Ms. Senerth reading medical literature and, "to a lesser extent," case law.  *Id.* at 7–8.  As an example, the Special Master pointed to her invoice for half-an-hour to read a well-known article by S. Atanasoff about SIRVA injuries.  *Id.* at 7.  He reasoned that, given Ms. Senerth's experience, she "is likely to have encountered and reviewed Atanasoff before," and "[i]n any event, the Atanasoff article is only four pages, and the terminology is not complicated."  *Id.*  The Special Master also questioned the time spent reviewing legal opinions, citing an invoice for one hour to read a twenty-two page opinion and three entries in which Ms. Senerth re-reviewed the same case.  *Id.* at 8.  He deducted $4,000 from attorneys' fees to "account for these issues."  *Id.*

The Special Master also reduced Dr. Natanzi's hourly rate from the requested $600 to $500.  *Id.*  He noted "Dr. Natanzi's work has typically been compensated at $500.00 by the undersigned and other special masters," offering a prior decision as an example.  *Id*. (citing *Karapetian v. Sec'y of Health & Hum. Servs.*, No. 19-546V, 2022 WL 1865083, at *3 (Fed. Cl. Spec. Mstr. May 9, 2022)).  However, the cited decision did not involve Dr. Natanzi.  *See Karapetian*, 2022 WL 1865083, at *3 (awarding a $500 hourly rate to Dr. Frederick Nahm, a neurologist).  In any case, the Special Master declined to increase Dr. Natanzi's rate because his "work was not of such exceptional quality that his work merits a premium increase."  Dec. at 8.

Fourth, the Special Master denied in full two of Dr. Natanzi's "exorbitant" charges.  *Id*. at 8–9.  Dr. Natanzi charged $28,800 for two days of trial testimony.  *Id*. at 8.  Dividing that amount by the $600 hourly rate, the Special Master calculated that this represented forty-eight straight hours of work, "regardless of whether he was awake or asleep."  *Id*. at 8–9.  This charge "so greatly exceeds the bounds of reasonableness" that the Special Master denied the entire amount.  *Id*. at 9.  He did the same for Dr. Natanzi's $9,000 "appearance fee" for missing work.  *Id.*  The Special Master explained that the "purpose of not awarding any compensation for such an unreasonable request is to deter other people from making similarly outrageous requests."  *Id*. (first citing *Valdes v. Sec'y of Health & Hum. Servs.*, No. 99-310V, 2009 WL 1456437, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2009); then citing *Env't Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993); and then citing *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1036 (N.D. Iowa 2010)).

Finally, the Special Master penalized Petitioner for requesting Dr. Natanzi's first-class airfare.  *Id.*  He cited a prior order specifically warning the parties that submitting a first-class travel expense would result in a deduction for twice the amount charged.  *Id*.; *see also* Order on Travel Expenses (hereinafter "Travel Order") at 2, ECF No. 94 ("If a request for reimbursement of costs includes an airline fare more expensive than coach, the request is likely to be deducted at TWICE the rate submitted.").  Accordingly, he deducted double the $1,887.81 first-class charge, removing $3,795.62.  Dec. at 9.  In total, Petitioner's $200,531.67 request was reduced by $48,295.71, resulting in a $152,235.96 award.  *Id.* at 10.

Petitioner filed a motion for review challenging each reduction except the $2,000 deduction for paralegal work and the $9,000 appearance fee.  Mot. for Review at 5–11.  She contends the time spent reviewing case law and medical literature is reasonable; the reduction of Dr. Natanzi's hourly rate ignored more recent case law supporting $600 per hour; and the complete denial of the two-day testimony charge was inappropriately severe.  *Id.* at 5–8.  Petitioner characterizes those deductions as abuses of discretion, unsupported by the record, and inconsistent with "Vaccine Program Practice."  *Id*.  Finally, she argues the double deduction for first-class airfare constitutes a punitive sanction unauthorized by the Vaccine Act's mandate to award reasonable costs.  *Id.* at 8–9.  As policy considerations, Petitioner adds that unfair fee reductions penalize counsel for performing their ethical obligations and discourage qualified professionals from participating in the Vaccine Program.  *Id*. at 10–11.

3

On October 2, 2025, Respondent filed a response largely defending the Special Master's decisions, emphasizing that "[a]buse of discretion is a highly deferential standard of review." Resp. to Mot. for Review at 2, ECF No. 131.  Respondent further claims Petitioner waived her arguments regarding Dr. Natanzi's fees because she did not file a reply.  *Id*. at 7 (citing Rules of the Court of Federal Claims (hereinafter "RCFC") App. B, Rule 8(f)).  Petitioner's challenge to the airfare deduction is also waived, Respondent argues, because the Travel Order put her on notice of the double deduction, and she failed to seek an exemption from the Order.  *Id*. at 8–9.

## II.    Standard of Review

The U.S. Court of Federal Claims may set aside a special master's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  42 U.S.C. § 300aa–12(e)(2)(B).  A special master's determination of reasonable attorneys' fees and costs is a discretionary ruling that this Court reviews under the abuse of discretion standard.  *Lewis v. Sec'y of Health & Hum. Servs.*, 149 Fed. Cl. 308, 313 (2020) (first citing *Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1356 (Fed. Cir. 2011); and then citing *Caves v. Sec'y of Dep't of Health & Hum. Servs.*, 111 Fed. Cl. 774, 778–79 (2013)).  An abuse of discretion occurs when "(1) the court's decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of law; (3) the court's findings are clearly erroneous; or (4) the record contains no evidence on which the . . . court rationally could have based its decision." *Id*. at 313–14 (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986)).

Abuse of discretion "is a highly deferential standard of appellate review."  *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017).  This Court "must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."  *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991).  Nonetheless, this wide latitude does not amount to a "rubber stamp."  *Lewis*, 149 Fed. Cl. at 314 (quoting *Paluck v. Sec'y of Health & Hum. Servs.*, 104 Fed. Cl. 457, 467 (2012)).  And any legal questions raised by a special master's ruling are reviewed de novo.  *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

## III.    Legal Standards

Under the Vaccine Act, a prevailing petitioner shall be awarded reasonable attorneys' fees and other costs incurred during the petition proceedings.  42 U.S.C. § 300aa–15(e)(1).  Fees for experts "are subject to the same reasonableness standard as [attorneys' fees]."  *Lewis*, 149 Fed. Cl. at 314 (quoting *Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 145 (2019)).  A special master may use the "lodestar approach" to determine reasonable fees.  *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (citation omitted).  This is a two-step process: first, the special master determines a reasonable hourly rate and multiplies it by a reasonable number of hours spent on litigation.  *Id*. at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the special master may depart from this initial calculation "based on other specific findings."  *Id.* at 1348.

4

The petitioner bears the burden to establish the lodestar.  *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 205 (quoting *Rupert ex rel. Rupert v. Sec'y of Health & Hum. Servs.*, 52 Fed. Cl. 684, 686 (2002)).  The petitioner must "show that the hours claimed are reasonable . . . and that proper documentation of the hours expended and hourly rates has been submitted."  *Id.* at 211 (citations omitted).  The petitioner must also prove the appropriate hourly rate.  *Lewis*, 149 Fed. Cl. at 314 (citations omitted).

A determination of the reasonable number of hours must exclude "hours that are excessive, redundant, or otherwise unnecessary."  *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)).  The reasonable hourly rate is "'the prevailing market rate,' defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  Special masters should use the forum (here, the District of Columbia) to determine the market rate, unless the bulk of the work is done outside the District and rates are substantially lower there.  *Id.* at 1349 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).  The special master "must adequately explain his reasons for developing the stated reasonable rate."  *Sabella*, 86 Fed. Cl. at 205 (citing *Rupert*, 52 Fed. Cl. at 694).

Fee applicants must provide contemporaneous billing records.  *Lewis*, 149 Fed. Cl. at 317 (first citing *Rumsey v. Dep't of Just.*, 866 F.3d 1375, 1379 (Fed. Cir. 2017); then citing *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed Cir. 1987); and then citing *Am. Fed. Bank, FSB v. United States*, 74 Fed. Cl. 208, 223 (2006)).  Under this Court's Rules, a petitioner seeking reimbursement of expert costs must submit "(a) contemporaneous time sheets showing how many hours were billed on a specific task multiplied by a proposed hourly rate; and (b) any other information petitioner deems necessary to substantiate the reasonableness of the work for which reimbursement is being sought."  RCFC 2d Supp. to App. B, Rule 3; *see also* RCFC 2d Supp. to App. B, Rule 1(a)(i)(B) ("Each individual task should have its own entry indicating the amount of time dedicated to that task.  Time should be billed in increments of one-tenth of an hour.").

The "failure to document the claimed costs results in denial of that claim."  *Sabella*, 86 Fed. Cl. at 205 (quoting *Wilcox v. Sec'y of Health & Hum. Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997)); *see also Naporano*, 825 F.2d at 404 ("The court needs contemporaneous records of exact time spent on the case . . . .  In the absence of such an itemized statement, the court is unable to determine whether the hours, fees and expenses, are reasonable for any individual item.") (citation omitted).  A court has no obligation to reconstruct the petitioner's bills.  *See Naporano*, 825 F.2d at 405.

## IV. Discussion

### A. The Special Master Reasonably Reduced Hours Spent Reviewing Literature.

The Special Master's reduction of time for reviewing medical literature and case law is not an abuse of discretion. He determined Petitioner's counsel spent "more time than expected on almost all articles filed as exhibits," citing her thirty-minute review of the Atanasoff article as an example because (1) it should have been familiar to counsel, (2) its terminology was not complicated, and (3) it was only four pages long. Dec. at 7–8. The Special Master concluded counsel also excessively charged for reviewing legal opinions, citing an invoice item for one hour to review a twenty-two page opinion with additional entries to review the same case. *Id*. at 8.

To determine a reasonable number of hours, the Special Master may draw on prior experience with Vaccine Program fee applications. *See Saxton*, 3 F.3d at 1521 ("It [is] well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done."). The reduction of time based on special masters' estimates of reasonable efficiency is a well-established practice. *See, e.g.*, *Thompson v. Sec'y of Health & Hum. Servs.*, No. 12-475V, 2018 WL 1559799, at *3–4 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) (reducing fees awarded by $1,999.90 based on the special master's estimate that it should not take six minutes to enter a date on one's calendar); *Yang v. Sec'y of Health & Hum. Servs.*, No. 10-33V, 2013 WL 4875120, at *7 (Fed. Cl. Spec. Mstr. Aug. 22, 2013) (reducing time for billing thirty minutes to draft and file a notice of intent to remain in the Vaccine Program to fifteen minutes).

In *Caves v. Sec'y of Health & Hum. Servs.*, for example, the Court upheld a special master's determination that an expert "should have . . . been somewhat familiar with the literature" and therefore be capable of greater efficiency. 111 Fed. Cl. 774, 783 (2013). Similarly, in *Broekelschen v. Sec'y of Health & Hum. Servs.*, the Court upheld the reduction of thirty-five hours to seven hours based on an estimate of one page per minute as a reasonable reading speed for experienced counsel. No. 07-137V, 2008 WL 5456319, at *8. Likewise, in *Morse v. Sec'y of Health & Hum. Servs.*, the Court upheld a twenty-seven hour reduction from forty total billed hours where the petitioner failed to show that the special master's efficiency estimate was "the product of erroneous fact finding, misinterpretation of law, or error of judgment." 89 Fed. Cl. 683, 689 (2009) (citation omitted).

Here, Petitioner argues against the reduction of time because "repetition does not negate necessity," "complexity is not measured by page length," and other courts have upheld spending half-an-hour or more on similar article review. Mot. for Review at 5–6 (citing *O'Neill v. Sec'y of Health & Hum. Servs*, No. 08-243V, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015)). But the Special Master did not suggest it is unnecessary to be thorough when reviewing materials—rather, he made an estimate of reasonable efficiency. Such an incremental, experience-based reduction lies squarely within the Special Master's discretion.

Furthermore, citations to other decisions awarding similar charges do not contradict the reasonableness of a different outcome. *See Lewis*, 149 Fed. Cl. at 315 (rejecting petitioner's argument that three cases awarding a $500 hourly rate obligated the special master to do the same). So long as the Special Master articulated a rational basis to estimate the appropriate number of hours, this Court must defer to his discretion. *See id.* Here, the Special Master based the modest $4,000 reduction on his prior experience and example invoices he found unreasonable. Because his determinations rest on relevant experience and rational standards of efficiency, the $4,000 reduction is affirmed.

> B. **The Special Master Abused his Discretion by Reducing Dr. Natanzi's Rate without Citing Evidence of a Prevailing Market Rate.**

The Special Master's reduction of Dr. Natanzi's rate from $600 per hour to $500 per hour is an abuse of discretion because the cited evidence does not support the reduction. The Special Master must make a reasonable estimate of the "prevailing market rate" for Dr. Natanzi's services. *See Avera*, 515 F.3d at 1348 (citing *Blum*, 465 U.S. at 896 n.11). He found that "Dr. Natanzi's work has typically been compensated at $500.00 by the undersigned and other special masters." Dec. at 8 (citing *Karapetian*, 2022 WL 1865083, at *3).

However, the one case he cites in support of this finding does not discuss Dr. Natanzi's rate. Instead, it awarded a $500 hourly rate to a neurologist named Dr. Frederick Nahm. *See Karapetian*, 2022 WL 1865083, at *3. Dr. Natanzi is a rehabilitation specialist, not a neurologist. Dec. at 2. Though it may indeed exist, the Special Master provides no case law or other authority to support a prevailing market rate of $500 for Dr. Natanzi or similarly qualified rehabilitation specialists.

Furthermore, even if the Special Master recalls awarding a $500 rate to Dr. Natanzi based on prior experience, courts should take inflationary adjustments into account when evaluating rates. Local forum rates "are usually determined by finding a reasonable rate for one year, and then increasing it or decreasing it by an inflation factor." *Anthony v. Sec'y of Health & Hum. Servs.*, No. 14-680, 2016 WL 7733084, at *2 (Fed. Cl. Spec. Mstr. Dec. 15, 2016) (citations omitted). For example, Petitioner provides a 2023 case in which the Chief Special Master accepted Dr. Natanzi's $600 hourly rate. Mot. for Review at 6–7 (citing *Peka v. Sec'y of Health & Hum. Servs.*, No. 20-1099V, 2023 WL 9288151 (Fed. Cl. Dec. 20, 2023)). The Chief Special Master awarded this rate even though it reflected an increase from 2022. *Peka*, 2023 WL 9288151, at *4 n.8.

Fees for experts and attorneys' fees "are subject to the same reasonableness standard." *Lewis*, 149 Fed. Cl. at 314 (quoting *Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 145 (2019)). A special master "must adequately explain his reasons for developing the stated reasonable rate." *Sabella*, 86 Fed. Cl. at 205 (citing *Rupert*, 52 Fed. Cl. at 694). Without accurate evidence supporting a prevailing market rate of $500 for Dr. Natanzi, the record is insufficient to review the Special Master's decision. The Court remands this matter to the Special Master to determine a reasonable rate for Dr. Natanzi's services citing applicable factors and current prevailing rates.

### C. Because Petitioner Provided No Documentation of Dr. Natanzi's Hours for Testifying, the Special Master Reasonably Denied the Full Charge.

The Special Master acted within his discretion by completely denying Petitioner's unreasonable $28,800 charge for forty-eight straight hours of testimony by Dr. Natanzi. Petitioner did not meet her burden to establish the reasonable number of hours Dr. Natanzi testified and made no attempt to do so. The two hearing days at which Dr. Natanzi testified lasted for around seven and two and a half hours, respectively, and he did not testify the entire time. *See* Certified Transcript of November 29 Hearing at 82, 314, ECF No. 107; Certified Transcript of November 30 Hearing at 319, 426, ECF No. 108. While of course impossible, forty-eight straight hours of testimony are particularly glaring in the context of a hearing that lasted nine and a half hours in its entirety.

Furthermore, an invoice for "[t]wo days of trial testimony" provides no basis upon which the Special Master could reasonably estimate the hours Dr. Natanzi actually testified. Ordinarily, if a statute requires the award of attorneys' fees, then even "[w]here documentation is inadequate, the [trial] court is not relieved of its obligation to award a reasonable fee." *Rumsey v. Dep't of Just.*, 866 F.3d 1375, 1380 (Fed. Cir. 2017) (quoting *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed. Cir. 1991)). But the fee applicant in *Rumsey* still provided itemized billing records, even though she conceded that her attorney's charges should not be fully compensable. *See id.* at 1381. Here, the invoice provides no breakdown of Dr. Natanzi's testimony that would allow the court to "fulfill its duty to examine the application for noncompensable hours." *See id.* at 1379 (quoting *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)). The Special Master had no obligation to "reconstruct the bills" by attempting to deduce the hours Dr. Natanzi actually spent testifying. *See Naporano*, 825 F.2d at 405.

As the Special Master notes, "Dr. Natanzi appeared in court in Ann Arbor, and ordinarily, would be entitled to some compensation for his time." Dec. at 9. But because Petitioner charged a fictitious number of hours and failed to document even a reasonable estimate of Dr. Natanzi's testimony, the total denial of compensation is appropriate. *See Sabella*, 86 Fed. Cl. at 205.

### D. The Special Master Acted Within his Authority to Enforce a Pretrial Order by Deducting Double Dr. Natanzi's First-Class Airfare.

By deducting double Petitioner's $1,897.81 charge for Dr. Natanzi's first-class airfare, the Special Master effectively imposed an additional $1,897.81 sanction against Petitioner. Although section 300aa–15(e)(1) of the Vaccine Act does not explicitly contemplate this kind of penalty, the Special Master has authority under the Act and the Vaccine Rules to issue pretrial orders and sanction parties for disobeying them.

Prior to the November hearings, the Special Master issued a Travel Order explicitly and emphatically advising the parties that "[t]ravelers should fly on a commercial airline in coach class. If a request for reimbursement of costs includes an airline fare more expensive than coach, the request is likely to be deducted at TWICE the rate submitted." Travel Order at 2 (emphasis

in original).  When Petitioner ignored this Order, the Special Master penalized her exactly as warned.  Dec. at 9.

Petitioner argues the double deduction "was punitive and inconsistent with the Vaccine Act's mandate to award 'reasonable' costs, not to impose sanctions.'"  Mot. for Review at 8 (first citing 42 U.S.C. § 300aa–15(e)(1); then citing *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994); and then citing *Valdes*, 2009 WL 1456437, at *4)) (cleaned up).  But section 300aa–15(e)(1) only pertains to attorneys' fees; Petitioner cites no Vaccine Act provision or case law limiting a special master's authority to sanction parties for violating an express order.

Special masters have "broad authority in conducting proceedings under the [Vaccine] Act."  *W.J. by R.J. v. Sec'y of Health & Hum. Servs.*, 93 F.4th 1228, 1242 (Fed. Cir. 2024) (quoting *Simanski v. Sec'y of Health & Hum. Servs.*, 671 F.3d 1368, 1371 (Fed. Cir. 2012)).  "This broad authority is embodied in . . . Vaccine Rule 1(b)," which provides that in "any matter not specifically addressed by the Vaccine Rules, the special master may regulate applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide the case promptly and efficiently."  *Id.* (quoting RCFC App. B, Rule 1(b)).

Under the Vaccine Act, special masters have authority to "conduct such hearings as may be reasonable and necessary."  42 U.S.C. § 300aa–12(d)(3)(B)(v).  In support of this authority, the Vaccine Rules contemplate the power to issue pretrial orders and enforce them with sanctions, authorizing special masters to "order a party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with a scheduling or other pretrial order."  RCFC App. B, Rule 5(c)(1).  While this Rule discusses imposing attorneys' fees to compensate a party for costs incurred, the Rules do not suggest this is the *only* mechanism available to special masters to enforce their orders.  *Cf W.J. by R.J.*, 93 F.4th at 1242–43 (upholding a special master's authority to rule on 12(b)(6) motions to dismiss because the Vaccine Rules authorize summary judgment rulings and "do not prohibit motion to dismiss practice").

The imposition of punitive attorneys' fees to enforce orders are consistent with a special master's general authority to conduct hearings.  "[S]pecial masters, like judges, have wide latitude in managing their docket."  *Id.* at 1243 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  And federal judges have "inherent power to assess attorney's fees against counsel" in certain circumstances.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Exp. Inc. v. Piper*, 447 U.S. 752, 765 (1980)).  A "court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'"  *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258 (1975)).  To determine whether a party willfully disobeyed an order, a court "need not find that the party acted in bad faith."  *Stiegler v. Sec'y of Health & Hum. Servs.*, 176 Fed. Cl. 786, 802 (2025) (quoting *Pyramid Real Est. Servs., LLC v. United States*, 95 Fed. Cl. 613, 623 (2010)).  Instead, it may find a willful violation "when it determines that a party took an action that 'it knew or should have known to be contrary to an express court order.'"  *Id.* (quoting *Pac. Gas & Elec. Co. v. United States*, 82 Fed. Cl. 474, 483 (2008)).

When assessing attorneys' fees, a court "must comply with the mandates of due process." *Chambers*, 501 U.S. at 50 (citing *Roadway Exp.*, 447 U.S. at 767). Due process requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Allen v. United States*, 88 F.4th 983, 987 (Fed. Cir. 2023) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)); *see also Roadway Exp.*, 447 U.S. at 767 ("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.").

Here, Petitioner had both notice and an opportunity to be heard. The Travel Order was her notice; it made its warning clear. Travel Order at 2 (advising that requests for first-class airfare were "likely to be deducted at TWICE the rate submitted"). Petitioner should have known that an unexplained invoice for first-class airfare would violate the Order. *See Stiegler*, 176 Fed. Cl. at 802 (finding it "readily apparent" that petitioner's counsel should have known filing a reply brief was contrary to an express court order denying permission to file one).

Petitioner's motion for attorneys' fees and costs was her opportunity to be heard. Knowing that a first-class charge violated the Travel Order, Petitioner had the opportunity to explain why Dr. Natanzi flew first-class anyway. She did not. *See* Pet'r's App. at 1–4. Furthermore, a court does not need to hold a hearing to sanction an attorney when "[a]ll the relevant 'conduct' is laid out in the briefs themselves" and "neither the mental state of the attorney nor any other factual issue is pertinent to the imposition of sanctions." *Romala Corp. v. United States*, 927 F.2d 1219, 1226–27 (Fed. Cir. 1991) (quoting *Hill v. Norfolk W. Ry. Co.*, 814 F.2d 1192, 1201–02 (7th Cir. 1987)). Presented with an unexplained violation of a court order, the Special Master reasonably imposed the double deduction as he said he would.

Petitioner attempts to defend the first-class airfare for the first time in her Motion for Review, but her arguments are as unavailing as they are late. She submits that "first-class can be available at or near coach rates depending on departure time," and "[p]unishing Petitioners for a ticket label, rather than assessing the reasonableness of the actual fare, is arbitrary." Mot. for Review at 9. Such a justification should have been presented to the Special Master, not this Court. As Respondent points out, under the Vaccine Rules, "[a]ny fact or argument not raised specifically in the record before the special master will be considered waived and cannot be raised by either party in proceedings on review of a special master's decision." Resp. to Mot. for Review at 7 (quoting RCFC App. B, Rule 8(f)(1)).

Furthermore, Petitioner has not provided evidence, either to the Special Master or this Court, that Dr. Natanzi's first-class airfare was, in fact, "at or near coach rates." Mot. for Review at 9. And she bore the burden of providing documentation necessary to substantiate the reasonableness of the cost for which reimbursement is being sought. *See* RCFC 2d Supp. to App. B, Rule 13(a)(1); *Lewis*, 149 Fed. Cl. at 317. Without a compelling reason for violating the Travel Order, this Court applies the abuse of discretion standard and defers to the Special Master's determination that first-class airfare was an unreasonable charge. *See Hines*, 22 Cl. Ct. at 753. The $3,795.62 deduction for first-class airfare is affirmed.

## V. Conclusion

For these reasons, the Petitioner's Motion for Review is **GRANTED-IN-PART** and **DENIED-IN-PART**. ECF No. 128. The Special Master's August 8, 2025 Decision on Attorneys' Fees and Costs is **AFFIRMED-IN-PART** and **VACATED-IN-PART**. ECF No. 126. This matter is **REMANDED** to the Special Master to provide a sufficient basis to determine Dr. Natanzi's hourly rate and recalculate Petitioner's costs.

Petitioner is awarded interim fees of $128,265.95 for her attorneys' fees. Pursuant to Rule 54(b), there being no just reason for delay, the Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge